1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ACLU of SOUTHERN CALIFORNIA  )
                              )
            Plaintiff,        )
                              )
vs.                           )
                              )
UNITED STATES DEPARTMENT of   )
HOMELAND SECURITY, *et al.*   )
                              )
            Defendants.       )
_____)

CASE NO. CV 11-10148 ODW (jcx)

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR
SUMMARY JUDGMENT  [33, 36]

**I.    INTRODUCTION**

The American Civil Liberties Union of Southern California ("Plaintiff" or "ACLU") filed this action under the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, seeking agency records related to a work-site enforcement operation at Terra Universal, Inc., a factory in southern California. (Mot. at 1.)  Defendants, the U.S. Department of Homeland Security ("DHS") and its component, U.S. Immigration and Customs Enforcement ("ICE"), argue they conducted a reasonable search for agency records and produced all responsive documents that are not exempt from release under FOIA, 2126 pages in total. (Id. ("Defendants have provided declarations detailing their searches and describing the exempt material.").)  Thus, Defendants contend, the "Court should grant Defendants' motion for summary judgment." (Id.)

/ / /

## II.   FACTS

On January 19, 2011, Plaintiff submitted to Defendant ICE a request for agency records pursuant to FOIA and the Privacy Act (the "Request"). (UF 1.)  The Request sought two categories of documents: (1) Records relating to ICE policies, procedures and practices with respect to work-site immigration enforcement in effect or issued from January 2010 until the present; and (2) Records relating to Terra Universal, Inc. and Osfel Andrade Castillon. (Id.)  Also on January 19, 2011, Plaintiff submitted to Defendant DHS a request seeking the same records. (UF 2.)

DHS first referred the Request to ICE for processing but, following an administrative appeal, DHS processed Plaintiff's Request. (UF 6, 7, 8.)  Defendant DHS produced no documents in response to Plaintiff's Request.  But, in productions made on June 19 and June 28, 2012, Defendant ICE provided 2113 pages of records and represented that their search was complete. (UF 9.)  ICE subsequently produced an additional 13 pages. (Stacy Horth-Neubert Decl. ¶ 5.)

## III.   DISCUSSION

### Legal Standard

Summary judgment "should be rendered if the . . . materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Id*. at 256–57.  Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.*  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

Under FOIA, an agency faced with a request for records must demonstrate it conducted "a search reasonably calculated to uncover all relevant documents." *Lane v. Dept. of Interior*, 523 F.3d 1128, 1139 (9th Cir. 2008). The adequacy of an agency's search under FOIA is reviewed under a standard of reasonableness. *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995); *Church of Scientology Int'l v. U.S. Dept. of Justice*, 30 F.3d 224, 230 (1st Cir. 1994). The agency need not search every record system that may exist or conduct a perfect search. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.' " *Church of Scientology Int'l*, 30 F.3d at 230; *see also Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986) (search is not presumed unreasonable simply because it fails to produce all relevant material).

Defendants' Motion for Summary Judgment

In its First Amended Complaint, Plaintiff, ACLU of Southern California, alleges two causes of action: (1) against ICE for failure to grant a public-interest fee-waiver request; and (2) against ICE and DHS for failure to make an adequate search for records responsive to Plaintiff's FOIA request and failure to promptly release the records sought by Plaintiff, in alleged violation of 5 U.S.C. § 552(a)(3)(A)–(D). (Opp'n at 7.)

*First Claim*

As Plaintiff acknowledges, "[a]fter the First Amended Complaint was filed, Defendants agreed to grant Plaintiff's request for a fee waiver, as demanded by Plaintiff's First Cause of Action." (Opp'n at 7.) Accordingly, this first claim is **MOOT**. *See, e.g.*, *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) ("[T]he CIA's decision to release documents to Hall without seeking payment from him moots Hall's arguments that the district court's denial of a fee waiver was substantively incorrect. . . . Hall's case is moot because he already has 'obtained everything that [he] could recover . . . by a judgment of this court in [his] favor.'" (citation omitted)).

/ / /

*Second Claim*

The Court examines the reasonableness of the searches by addressing Plaintiff's arguments in Opposition.  Complaining "ICE's production consists of records about Mr. Andrade, with much of his personal information redacted, work-site enforcement updates with numerous large, block redactions, heavily redacted correspondence with Plaintiff and other third parties; a Consent Judgment from this court with names redacted, and other attachments with large, block redactions . . ." (Opp'n at 7), Plaintiff argues Defendants have failed to meet their search obligations under FOIA for two reasons.  First, Plaintiff argues Defendants failed to provide sufficiently detailed affidavits to allow Plaintiff or the Court to properly assess the adequacy of their searches. (Id. at 10.) Second, Plaintiff finds it "evident from Defendants' declarations and the records that have been produced that Defendants' searches were not sufficient." (Id. (the "Court should order Defendants to search the record systems likely to have responsive documents, and provide revised declarations with requisite detail regarding the adequacy of their search efforts").)

As to the sufficiency of the affidavits, Plaintiff acknowledges that Defendants "describe the databases searched and list the search terms used," but contends Defendants fail to describe "the nature and scope of all databases and indices maintained," or "which databases and indices were not searched and why not." (Opp'n at 11 (quoting *Rosenfeld v. Dep't of Justice, No. 07-03240*, 2008 WL 3925633, at \*14 (N.D. Cal. Aug. 22, 2008)).) As Defendants observe, "Plaintiff proposes that the Court mandate that all search declarations include responses to the five questions employed by a judge in the Northern District of California who rejected a conclusory FBI affidavit and required a supplemental declaration." (Reply at 3 (citing Pl.'s Opp'n & Cross-Mot. at 10-13).)[1] The Court declines to so mandate here. *See Brown v. U.S. Dep't of Justice*, 734 F. Supp. 2d 99, 108–09 (D.D.C. 2010) (declining to adopt *Rosenfeld* inquiries).

---

[1] It bears emphasizing that Plaintiff's utilization of its Opposition brief to launch its own cross-motion was ill advised  and counterproductive, and it merely muddled the briefs and stunted the arguments' development.

4

It is well-established that an "agency may meet its burden by providing a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) ("The plaintiff may then provide countervailing evidence as to the adequacy of the agency's search.  If a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate.").  The Court begins by examining DHS's search.

### DHS Search

DHS provided the declaration of James Holzer, its Director for Disclosure and FOIA Operations, to detail its search. (Reply at 5 (citing Holzer Decl).)  DHS explained that it tasked three of its components with searching for records: the Office of the Secretary, the Office of Policy, and the Office of Civil Rights and Civil Liberties. (Id.)  DHS concluded that no other components were reasonably likely to have responsive records, and Plaintiff acknowledges that Defendants "describe the databases searched and list the search terms used." (Opp'n at 11.)  The Court accordingly finds that this "reasonably detailed" declaration is sufficient to meet Defendants' initial burden as to the reasonableness of the search. *Iturralde*, 315 F.3d at 313–14.

As Defendants note, Plaintiff challenges two aspects of DHS's search. (Reply at 5.)  First, Plaintiff alleges that DHS provided an insufficient description of the search by the Office of Policy. (Opp'n at 11–12.)  DHS has provided a supplemental declaration, however, detailing this search. (Reply at 5.)  DHS's declarant explains that at least five different officials searched both emails and shared folders using the search terms "Terra," "Universal," and "Terra Universal" in the Office of Policy and its subcomponent Office of Immigration and Border Security. (Id. (citing Suppl. Holzer Decl. ¶¶ 8–9).)  DHS also explained why the Office of Policy was unlikely to have responsive records regarding the other topics of the FOIA request. (Id. ¶ 10.)  Like above, this is sufficient.

/ / /

Second, Plaintiff claims that DHS should have searched its Office of Inspector General ("DHS OIG") because (1) Plaintiff had submitted a letter to ICE Director John Morton, which was copied to the Secretary of DHS, raising allegations of improper conduct by ICE officials during and following the work-site enforcement action; and (2) because ICE decided to search its own Office of Professional Responsibility ("ICE OPR"). (Reply at 5–6 (citing Opp'n at 12–13).)  The Court disagrees.

The reasonableness of an agency's decision regarding which components to search depends on a reasonable construction of the FOIA request, not upon documents never provided to the agency's FOIA office. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A]dequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request."). Here, Plaintiff requested records regarding Terra Universal, and set out specific subcategories.  None of those categories concerned internal investigations of alleged DHS employee misconduct.  And any general complaints of misconduct by the ICE employees involved in the enforcement action would likely be handled by ICE OPR, not DHS OIG. (Reply at 6.)  Thus, the Court agrees with Defendants that "it was reasonable for DHS to conclude that DHS OIG was not likely to have responsive records." (Id.)  And, for the reasons discussed above, Defendants' motion for summary judgment is **GRANTED** as to DHS.

### ICE Search

ICE provided the declaration of Ryan Law, the Deputy FOIA Officer in ICE's FOIA Office, to detail its search. (Reply at 6 (citing Law Decl., ECF No. 33-3).)  ICE determined that four components were reasonably likely to have responsive records: the Office of Professional Responsibility ("OPR"), which investigates employee misconduct; the Office of Policy, which provides policy and legislative analysis; Homeland Security Investigations ("HSI"), which investigates the illegal movement of persons in the United States; and Enforcement and Removal Operations ("ERO"), which apprehends, detains, and removes illegal aliens. (Id. at 6–7.)

/ / /

ICE concluded that no other components were reasonably likely to have responsive records. (Id. (citing Law Decl. ¶ 9).)  The searches of ICE Policy, HSI, and ERO located more than 2000 pages of responsive records, which ICE reviewed and released, with redactions pursuant to FOIA exemptions. (Id. at 7.)

Unlike DHS's efforts, ICE's appear insufficient.  Indeed, Plaintiff has provided ample "countervailing evidence as to the adequacy of the agency's search." *Iturralde*, 315 F.3d at 313–14.  As Plaintiff points out, "Defendants' declarations demonstrate that its offices used incomplete and inconsistent search terms that were likely to result in a failure to locate responsive documents." (Opp'n at 13.)  This is particularly true with respect to Defendants' searches for documents related to Mr. Andrade, where Defendants' offices used vastly different search terms and several offices neglected to use variations that were very likely to yield results. (Id. ("Compare ECF No. 33-2, ¶ 17 (DHS CRCL: 'Osfel Andrade Castillon,' 'Osfel Andrade,' 'Osfel Castillon'), with id. ¶ 18 (DHS ESEC: 'Osfel Andrade Castillon'), with ECF No. 33-2, ¶ 27 (OPR: stating search used 'Mr. Andrade Castillon's name'), with id., ¶ 33 (HSI: for TECS database, 'Osfel Castillon'), with id. (HSI: for folder on shared drive, 'Mr. Andrade's name and A-number'), with id. (HSI: for search of Outlook, 'Castillon').").)

Further, in an August 9, 2012 email, and again in an August 13, 2012 letter, Plaintiff identified certain documents that Plaintiff had reason to believe were in ICE's possession, and that were responsive to Plaintiff's Request. (Opp'n at 13.)  On August 31, 2012, ICE produced two of these documents, stating that "in preparing their declarations and Vaughn Index, [they] found two additional documents that [the] letter of August 13 had identified." (UF 14.)   And, even with ICE's supplemental productions and Vaughn index, it remains unclear whether or not all of ICE's redactions are justified.  Both Plaintiff and the Court are entitled to information to properly evaluate the propriety of the asserted redactions. (Reply at 8.)  In short, review of the record raises "substantial doubt" as to the adequacy of the search, particularly in view of positive indications of overlooked materials [and] summary judgment is inappropriate." *Iturralde*, 315 F.3d at 313–14.

## IV.   CONCLUSION

Defendants' motion for summary judgment is **GRANTED** in part – as to DHS – and **DENIED** in part – as to ICE. [33]  Plaintiff's countervailing evidence casts substantial doubt as to the sufficiency of ICE's search. (*See generally*, Docket No. 36, Plaintiff's Opp'n & Cross-Mot.)   Plaintiff's cross-motion for summary judgment is conversely **DENIED** in part – as to DHS – and **GRANTED** in part – as to ICE.  Plaintiff shall lodge a proposed judgment reflecting this disposition forthwith.


**SO ORDERED**

October 25, 2012


OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE